Michael D. FOX, Stanley Herman and
Steven A. Conger, Plaintiffs,

v.

SIERRA DEVELOPMENT COMPANY,
dba Club Cal Neva, & Does 1
Through 10, Defendants.

No. CV–N–94–450–ECR.

United States District Court,
D. Nevada.

Jan. 30, 1995.

Peter C. Wetherall, Law Offices of Robert R. Hager, Reno, NV, for plaintiffs.

William G. Cobb, Erickson, Thorpe & Swainston, Ltd., Reno, NV, for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Defendant, the Sierra Development Company (Sierra) moves to dismiss plaintiffs', Fox, Herman and Conger's complaint for failure to state a claim upon which relief can be granted. The motion (Doc. # 9) has been opposed (Doc. # 12) and the opposition has been replied to (Doc. # 13). The motion to dismiss (Doc. # 9) is ripe for consideration.

### THE AMENDED COMPLAINT

The motion is directed to both the original complaint (Doc. # 1) and the first amended complaint (Doc. # 6). Furthermore, the motion makes passing reference to whether the first amended complaint is proper. Specifically, the motion questions whether plaintiffs' needed leave of the court to file the first amended complaint. Plaintiffs did not require leave to amend their complaint.

Amendments to pleadings are liberally allowed and a party may amend its pleading once without leave of court at any time prior to the service of a responsive pleading. Fed. R.Civ.P. 15(a).

After the original complaint was filed and served, only two documents were filed and served by Sierra prior to plaintiffs' first amended complaint. Those documents were the motion for more definite statement (Doc. # 4) and the certificate required by LR 135–5 (Doc. # 5). The certificate required by LR 135–5 is merely the representation by counsel for defendant Sierra that there are no other parties with an interest in the outcome of this case other than those already named as parties. This is in no way a responsive pleading.

The question then becomes whether a motion for more definite statement is a responsive pleading for purposes of Fed. R.Civ.P. 15(a). It is not. *Kroger Co. v. Adkins Transfer Co.*, 284 F.Supp. 371 (D.Tenn.1968), *aff'd*, 408 F.2d 813 (6th Cir. 1969); *see United Energy Owners v. United*

*Energy Management,* 837 F.2d 356, 358 (9th Cir.1988).

The motion for more definite statement is not a responsive pleading. Plaintiffs' were entitled to amend their complaint as a matter of right because they had not amended it before. Fed.R.Civ.P. 15(a). An amended complaint replaces and supersedes the original complaint. *Wilson v. First Houston Inv. Corp.,* 566 F.2d 1235 (5th Cir.1978); *Bullen v. De Bretteville,* 239 F.2d 824 (9th Cir.1956) *cert. denied,* 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856. Therefore, the motion to dismiss (Doc. # 9) addresses only the first amended complaint.

## THE MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6)

### A. Standard for Granting a 12(b)(6) Motion

A court may grant a motion to dismiss for failure to state a claim on which relief can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). A court may only look to the facts alleged in the complaint when deciding whether to grant a 12(b)(6) motion. *Id.* All material facts alleged in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. *Amfac Mortgage Corp. v. Arizona Mall of Tempe,* 583 F.2d 426, 430 (9th Cir.1978).

### B. The Cause of Action

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). Discrimi-

nation on the basis of sex was added at the last minute on the floor of the House of Representatives and therefore it was not the subject of much discussion. 110 Cong.Rec. 2577–2584 (1964). The result is a paucity of legislative history to inform the courts what Congress intended. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 63, 106 S.Ct. 2399, 2403, 91 L.Ed.2d 49 (1986).

It is a relatively simple matter to recognize that an employer cannot deny employment or employment benefits on the basis of an individual's sex, or gender.[1] *See e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (involving a situation where a female employee was not promoted to partner, at least in part because of her sex and the difficulty several partners had in dealing with her alleged unfeminine qualities (i.e. the claims that she did not act like a woman is "supposed" to act, was abrasive, macho and foul mouthed)).

The courts have gone beyond the relatively easy situation and recognized two varieties of what is called sexual harassment. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986); *Ellison v. Brady,* 924 F.2d 872, 875 (9th Cir.1991).

One form of sexual harassment, known as "quid pro quo" harassment, refers to situations where an employer conditions employment benefits on sexual favors. *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2404; *Ellison,* 924 F.2d at 875. The other form of sexual harassment, known as "hostile environment" harassment, refers to situations where employees work in offensive or abusive environments. *Ellison,* 924 F.2d at 875. The basis for this type of claim lies in the recognition that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2405.

---

1. Although the statute speaks in terms of sex, the Supreme Court has used the slightly broader term gender. *See e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 240, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989) (taking the words of the statute to mean that gender must be irrelevant to employment decisions). *See, J.E.B. v. Alabama Ex Rel. T.B.,* — U.S. —, —, n. 1, 114 S.Ct. 1419, 1436, n. 1, 128 L.Ed.2d 89 (1994) (Rehnquist, C.J., dissenting) (providing a brief distinction between the words Sex and Gender).

Plaintiffs' first amended complaint alleges only a single cause of action; sex discrimination in violation of 42 U.S.C. § 2000e. This complaint alleges

> [s]upervisors Jennings and Daniel, and other co-employees of Plaintiffs, in an open and notorious manner, engaged in the sexual harassment of plaintiffs by means of writing, drawing, and explicitly discussing homosexual sex acts, excrement, urine and other topics in a depraved manner which created for Plaintiffs a harmful and oppressive work environment, and which materially interfered with plaintiffs' ability to perform their work related duties. Jennings' and Daniel's depraved comments and conduct were done openly, and Jennings' and others' drawings were posted openly and near his office. Jennings and Daniel also encouraged, promoted, and rewarded similar conduct by other employees, which further expanded the hostile environment alleged herein.

First amended complaint (Doc. # 6) p. 5, ¶ 11.

The complaint clearly relies on and alleges a hostile environment theory of sex harassment. There are no facts alleged indicating a quid pro quo form of harassment existed. Plaintiffs' complaint must survive or fail on the sole basis of a hostile environment.

### C. The Motion to Dismiss

Sierra's motion to dismiss apparently contends that, to the extent the complaint alleges any hostile environment, the hostility is directed against sexual orientation and not sex or gender per se. Sierra cites case law for the proposition that § 2000e does not prohibit discrimination or harassment on the basis of sexual orientation. Sierra concludes that plaintiffs' complaint must therefore fail to state a claim of sex discrimination under § 2000e.

[8] Plaintiffs do not contest Sierra's proposition that § 2000e does not prohibit discrimination or harassment based on sexual orientation. The Ninth Circuit has held that discrimination on the basis of sexual preference is not prohibited by Title VII's prohibition of sex discrimination. *De Santis v. Pacific Tel & Tel. Co., Inc.,* 608 F.2d 327 (9th Cir.1979). More recent cases from other circuits have reached the same conclusion. *Williamson v. A.G. Edwards and Sons, Inc.,* 876 F.2d 69 (8th Cir.1989) *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990); *DeCintio v. Westchester County Medical Center,* 807 F.2d 304 (2d Cir.1986) *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987). We agree.

Plaintiffs complaint, to state a cause of action, must allege facts indicating the work environment was hostile to them on the basis of their gender. Phrased another way, plaintiffs must allege facts indicating the work environment was hostile to men *qua* men, not merely hostile on the basis of sexual orientation or preference.

### D. The Complaint Fails to Allege Facts Stating a Claim for Relief

[9] The only relevant allegation in the complaint is the claim that supervisors and co-employees engaged, in an open and notorious manner, in the writing, drawing and explicit discussion of homosexual sex acts. The remaining factual allegations relate to writings, drawings and discussions of excrement, urine and other topics. The Court does not see how this type of conduct can form the basis of a claim of sexual discrimination. Scatological and urinary fixations can be a source of harassment to persons not so fixated. It is a common fact of life that such topics are not the substance of polite conversation. Nevertheless, not every disturbance or annoyance can be the basis for a sexual harassment claim.

[10] A hostile environment sexual harassment claim has three elements: (1) the plaintiff must show "he or she was subjected to sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison,* 924 F.2d at 875–76.

For purposes of this motion we assume the Ninth Circuit would allow conduct not sexual

in nature to satisfy the first prong if it involved harassment purely on the basis of gender. The Ninth Circuit stated that it had not yet decided this issue in *Ellison,* 924 F.2d at 875, n. 5 (declining to decide whether a party can state a cause of action for a sexually discriminatory working environment when the conduct in question is not sexual). Although the Ninth Circuit has not yet explicitly resolved this issue, we proceed on the basis that if put to this question, the Ninth Circuit would find that harassment on the basis of gender, even when not sexual in nature would state a cause of action.

The *Ellison,* Court itself cited two out of circuit cases finding that such harassment does state a cause of action. *Id.* citing *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 (3d Cir.1990) and *Hall v. Gus Construction Co.,* 842 F.2d 1010, 1014 (8th Cir.1988).

Furthermore, the Ninth Circuit has implicitly held that harassment based purely on gender is actionable. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463–64 (9th Cir.1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995).[2] The court noted that "while [the abuser's] abuse of men in no way related to their gender, his abuse of female employees, especially Steiner, centered on the fact that they were females. It is one thing to call a woman 'worthless,' and another to call her a 'worthless broad.' " *Id.* at 1464. The quoted statement indicates the Court considered purely gender oriented harassment as well as sexually oriented harassment to constitute sex harassment.

Last, the Equal Employment Opportunity Commission's (EEOC) proposed new regulations, *see* 58 Fed.Reg. 51266 (1993) (proposed 29 CFR §§ 1609.1, 1609.2), "put in guideline form the rule that sex harassment is not limited to harassment that is sexual in nature, but also includes harassment due to gender-based animus." 58 Fed.Reg. 51266 (1993), supplementary information and n. 2, citing *Hall v. Gus Construction Co.,* 842 F.2d

1010, 1014 (8th Cir.1988) and *Robinson v. Jacksonville Shipyards,* 760 F.Supp. 1486, 1522 (M.D.Fla.1991) (both standing for the proposition that behavior not directed at a particular individual or group, but is disproportionately more offensive or demeaning to one sex violates Title VII).

The alleged conduct relating to "excrement, urine and other topics" is not sexual in nature. There is no indication this conduct involved any sexual connotations, the complaint merely alleges scatological and not copraphilial behavior. If this conduct were directed only at men, or were directed at plaintiffs because they were men, it might be actionable as gender oriented harassment as discussed above. However, there is no indication this was the case. If anything, the complaint indicates the excretory and urinary references were published widely to the general employee population. Thus, there is nothing to indicate this conduct constitutes gender oriented harassment.

### E. Homosexual References

 The only allegation which remains for consideration and upon which plaintiffs' sex harassment claim now hangs is that supervisors Jennings and Daniel and other co-employees sexually harassed plaintiffs by writing, drawing and explicitly discussing homosexual sex acts. Such conduct is sexual in nature, therefore the first prong of the *Ellison* tri-partite test is satisfied.

The other two elements; that the conduct was unwelcome and that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment are also satisfied. Plaintiffs' allege that this conduct created a harmful and oppressive work environment. Plaintiffs further allege that they complained of the alleged conduct to other supervisors who did nothing. Either of these allegations, is sufficient to satisfy the requirement that the complained of conduct was unwelcome.

---

**2.** The *Steiner,* Court did not maintain a rigid conceptual distinction between harassment sexual in nature and gender oriented harassment. Furthermore, the court relied on evidence of both sexually oriented and gender oriented harassment. Thus, the court's judgment does

not necessarily rest on the proposition that gender based harassment is actionable. On this basis, the Ninth Circuit could claim any statement in *Steiner,* to the effect that non-sexual, gender based harassment is actionable under § 2000e, is only obiter dicta.

A constant barage of any form of sexual expression, homosexual or otherwise is sufficient to satisfy the third prong.

■ Whether "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1994) (internal cites and quotations omitted), must be analyzed under a reasonable person standard. *Id.* at — –—, 114 S.Ct. at 370–71.

■ The Supreme Court has declined to require proof that a harassment victim suffered psychological injury. *Id.* All that is required is that "the environment would reasonably be perceived, and is perceived, as hostile or abusive[.]" *Id.* at —, 114 S.Ct. at 371. In answering this question, relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

All the listed factors are more subjective than objective. This is an issue which is more properly left for summary judgment, or trial than for determination at the pleading stage. Nevertheless we must rule on the motion. The complaint alleges conduct which could reasonably be perceived as creating a hostile and abusive work environment. The continuing nature, and encompassing character of the conduct, as alleged by plaintiffs, could create an environment which a reasonable person could perceive as hostile.[3] Furthermore, plaintiffs allege that they did in fact perceive the work atmosphere to be harmful and oppressive and that it materially interfered with their ability to perform work related duties.[4]

■ The Court notes that the complaint is very nearly deficient in alleging conduct from which a hostile environment could reasonably be perceived. Essentially all that plaintiffs' have alleged is a work environment saturated with sexual references, and that the pervasive theme of these references was homosexual. The Court declines to determine whether it is reasonable to perceive a work environment as hostile and abusive merely because a person might be uncomfortable with homosexuality.[5] Thus the homosexual content of the alleged conduct is not relevant to determining whether the alleged conduct adequately demonstrates a hostile environment.

The Court merely holds that given the highly charged views and attitudes about sex which are prevalent in our society, allegations of a work environment in which employees are constantly assaulted by a stream of sexual drawings, writings and discussions adequately alleges a work environment which could reasonably be perceived as hostile.

If the Court were to stop its analysis here, it would conclude that plaintiffs' complaint does state a claim, and that Sierra's motion to dismiss should be denied. However, the Court believes one further requirement must be considered.

---

3. This holding in no way endorses or comments on whether it is reasonable for a person to feel a generalized homosexual atmosphere is hostile or abusive. The court's holding is based on the understanding that reasonable persons might feel any sexually suggestive and all pervading atmosphere to be hostile and abusive. It is not unreasonable to expect a workplace to be free of sexually explicit and suggestive conduct. The sexual orientation of the particular employment environment is irrelevant to the court's holding.

4. The Court notes that the complaint alleges general conclusions rather than specific factual instances, yet it does not seem necessary to require a plaintiff to allege how exactly he or she feels harmed or oppressed or how the ability to work

has been affected. The conclusory nature of plaintiffs' complaint certainly pushes the boundaries of how little can be alleged and still state a claim. Nevertheless, under the circumstances and given the highly subjective nature of sexual harassment, the Court cannot say that the complaint is so deficient as to not state a claim at all.

5. The Court declines for two reasons. First, plaintiffs do not allege that they are heterosexual or uncomfortable with homosexuality. Thus, it is irrelevant to this case whether such a perception is reasonable. Second, the Court feels that discretion is the better part of valor and declines to decide so sensitive an issue where not absolutely necessary.

### F. The Environment Must be "Discriminatorily" Hostile

As noted above, the complaint alleges a work environment saturated with homosexual references. The homosexual aspect of the environment is irrelevant. All that remains is a sexually charged atmosphere. Such an atmosphere, although possibly hostile, abusive or oppressive is not discriminatory.

When the Supreme Court first approved sex harassment and hostile environment as forms of sex discrimination, it did so on the basis that "Title VII affords employees the right to work in an environment free from *discriminatory* intimidation, ridicule, and insult." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (emphasis added). In *Harris,* the Supreme Court consistently referred to a "discriminatorily" abusive or hostile environment. —— U.S. at ——-——, 114 S.Ct. at 370–371. A work environment, saturated with sexual references, is potentially abusive or hostile to men and women in equal measure. There is nothing to indicate that men or women will feel a sexually charged atmosphere such as that present here to be abusive or hostile to them on the basis of their gender. More to the point, the complaint does not allege facts from which men, such as plaintiffs, or women could reasonably conclude they were being intimidated, ridiculed, or insulted because they were men or women.

To the extent the work environment is alleged to be hostile or abusive it is not hostile or abusive to plaintiffs on a discriminatory basis. Plaintiffs do not perceive the work environment to be hostile to them because they are men. Plaintiffs perceive it to be hostile or abusive to them because they, like some members of society, may not be entirely at ease with sexuality in general and homosexuality in particular.[6]

This is a form of hostility or abuse which is not discriminatory on the basis of sex or gender. All persons regardless of sex, gender or sexual orientation might be offended by such conduct. We decline to interpret Title VII of the Civil Rights Act of 1964 to prohibit embarrassment, caused by sexually explicit writings, drawings and discussions.

To the extent the prohibition against sex harassment has been interpreted to prohibit explicit, sexually oriented writings, drawings and discussions from being displayed at the work place, it has been done on a case by case determination that such conduct was harmful to employees of one sex or the other, because it intimidated, ridiculed, or insulted that sex, usually women. The Court is unaware of any modern case standing for the proposition that sexuality in itself is hurtful to men or women.[7]

There are cases involving sexually explicit conduct which is oppressive to women. Some involved the display and posting of pornographic photographs, and the use of derogatory language directed at women. *See e.g. Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847, 879, 893 (D.Minn.1993); *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1491, 1522–27, 1535 (M.D.Fla. 1991). Such cases are of no avail to plaintiffs. In such cases, the public display of pictures of naked women, and discussions of sex were part of a larger environment of hostility to women.

**6.** Alternatively, it may be hostile or abusive to plaintiffs because they are heterosexual or homophobic. In this case, the work environment is hostile or abusive to plaintiffs due to their own *sexual orientation or their hostility to another orientation.* Such discrimination, or harassment is not prohibited by § 2000e. *See* discussion *supra,* at p. 1172.

The complaint nowhere alleges facts from which the Court could conclude that homosexually related conduct such as that alleged somehow intimidates, ridicules or insults men as such.

**7.** There has long been the paternalistic image of women as paragons of innocent, sexless purity.

*See* Jane E. Larson, *Seduction and Sexual Fraud,* 93 Colum.L.Rev. 374, 388–92 (1993); *but cf.* Carlin Meyer, *Sex, Sin, and Women's Liberation: Against Porn–Suppression,* 72 Tex.L.Rev. 1097, 1104–08 and fn. 24 (1994). When a woman's primary virtue is her sexual innocence and purity, the logical conclusion requires women to be protected from men's—and their own—baser sexual instincts. Larson, 93 Colum.L.Rev. at 388–92; Meyer, 72 Tex.L.Rev. 1108–1109. Such views were a primary justification for creating and maintaining gender based divisions of labor (i.e. the separate spheres doctrine). Larson, 93 Colum.L.Rev. at 388, fn. 55, and 388–92.

The *Ellison* Court noted that harassment, when analyzed from the victim's perspective requires an analysis of the different perspectives of men and women. *Ellison*, 924 F.2d at 878. Women have historically been subjugated, been at far greater risk of rape and sexual assault, and are commonly depicted in pornography in images of sexual coercion, objectification and coercion.[8]

This is not to say that men cannot be intimidated, ridiculed or insulted by images of naked men or homoerotic pornography. However, plaintiffs' complaint is entirely lacking any allegations from which the court can conclude that this occurred. Pictures, literature and discussions of homosexual conduct do not inherently intimidate, ridicule, or insult men. There is no historical tradition from which the Court can conclude that the alleged homosexual conduct includes scenes of sexual coercion, objectification and violence. There is no indication the complained of conduct implies a threat of violence towards men, hatred of men, or that it humiliates or ridicules of men as such.[9]

That an otherwise reasonable man might be highly offended by homosexual depictions is not enough. He must reasonably feel the homosexual depictions strike at his gender or attack him because of his gender. There is no allegation from which the Court can conclude that the homosexual writings, drawings, and discussions intimidated, ridiculed or insulted men or masculinity. All that is alleged is that the writings, drawings and discussions were homosexually oriented. This is not sufficient to indicate that plaintiffs' employment environment was "discriminatorily" hostile to men.

## CONCLUSION

Plaintiffs' complaint, to the extent it alleges a hostile working environment, does not allege any *discriminatory* hostility. The hostility alleged is not against men or masculinity. All that is alleged is a working environment saturated with homosexual references. While reasonable persons might be offended by excessive depictions of sexuality, this type of offense or hostile environment is not hostile on the basis of sex, or gender. It is only hostile to a person's notions of sexuality and its proper role or place.

Plaintiffs' complaint fails to allege that the complained of conduct is offensive to men, or intimidates, ridicules or insults men. Nor is there any allegation that the complained of conduct was targeted exclusively at men.

**IT IS, THEREFORE, HEREBY ORDERED that** Plaintiffs' first amended complaint (Doc. # 6) fails to state a claim for which relief can be granted. Defendant, Sierra Development Company's motion to dismiss (Doc. # 9) is ***GRANTED.***

**IT IS FURTHER ORDERED that** plaintiffs shall have twenty (20) days within which to file an amended complaint. If plaintiffs fail to do so, the Clerk shall enter judgment in favor of defendant Sierra Development Company.

---

**8.** *Ellison v. Brady*, 924 F.2d 872, 878–79 and nn. 9 & 10; *see also* Carlin Meyer, *Sex, Sin, and Women's Liberation: Against Porn–Suppression,* 72 Tex.L.Rev. 1097, 1135–36 (1994).

**9.** A logical distinction is apparent between homosexual pornography and traditional, male point-of-view oriented heterosexual pornography. In homosexual pornography both participants in a sexual depiction are male. Thus, to the extent any coercion, objectification or violence is depicted, both the perpetrator and the victim are male. There is no distinct and recognizable "other" against whom these degradations are being committed. Conversely, in male centered heterosexual pornography, women are traditionally and routinely degraded. There is a distinct and recognizable dominant class (men) and subjugated class (women). *See* Carlin Meyer, *Sex, Sin, and Women's Liberation: Against Porn–Suppression,* 72 Tex.L.Rev. 1097, 1137 & fn. 174–175 (presenting an argument that "for gay men, 'pornography becomes liberating rather than objectifying' and has 'the unique ability to destabilize the coherence of the male subject,' thereby 'subvert[ing] phallocracy.' Thus ... for gay men 'pornographic representation shifts from a sexual experience to a political expression.'" quoting from Carl. F. Stychin, *Exploring the Limits: Feminism and the Legal Regulation of the Gay Male Pornography,* 16 Vt.L.Rev. 857, 857 (1992); *but cf. id.* at 1131–32, fn. 151 (discussing the ambiguity involved in determining whether lesbian pornography involving sadomasochistic role playing portrays "egalitarian 'fun' or replicat[es] the patriarchal victimization of women.").