127 F.3d 1106
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Zephoria SMITH, Plaintiff-Appellant,
v.
OAKLAND SCAVENGER CO.; EAST BAY AUTO MACHINISTS UNION,
LOCAL 1546; BOARD OF ADJUSTMENT, Oakland Scavenger Co. and
Local 1546; Nick ANTONE; Bill ANNESS; Bob MACDOUGAL; Joe
DELMA; Dathi LOMBA; Jim ANDERSON, DefendantspAppellees.
 
 1
 Nos. 96-15601, 96-15797.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Oct. 16, 1997.
 
 3
 As Amended on Denial of Rehearing and Rehearing En Banc
 
 
 4
 Jan. 21, 1998.
 
 
 5
 Appeal from the United States District Court for the Northern District of California, No. CV-94-01354-CAL; Charles A. Legge, United States District Judge, Presiding
 
 
 6
 BEFORE: PREGERSON and HAWKINS, Circuit Judges, and WEINER,** Senior District Judge.
 
 
 7
 MEMORANDUM*
 
 
 8
 Zephoria Smith appeals the district court's grant of partial summary judgment to Oakland Scavenger Company, et. al, ("Oakland Scavenger"), on Smith's claim of retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e17 ("Title VII"). Smith also appeals the district court's decision in favor of Oakland Scavenger after a bench trial on Smith's claim that she was subjected to a hostile work environment in violation of Title VII. We affirm in part and reverse in part.
 
 I. The District Court's Verdict
 
 9
 Smith challenges the district court's factual findings made during the bench trial on her hostile work environment claim, and also challenges the court's application of the law to the facts. We address each challenge in turn.
 
 A. Factual Findings
 
 10
 "We review legal questions in Title VII actions de novo and review a district court's underlying findings of fact under a clearly erroneous standard." Gilligan v. Dep't of Labor, 81 F.3d 835, 838 (9th Cir.1996). We review a district court's finding as to the credibility of an employer's proffered reason for adverse employment action under the clearly erroneous standard. Id. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal quotations and citation omitted)
 
 1. Tolliver's Testimony
 
 11
 Smith argues that the district court clearly erred by discounting the testimony of one of Smith's corroborating witness, Verena Tolliver, because Tolliver was angry at Oakland Scavenger and had several legal actions pending against the company. The district court's evaluation, however, was a permissible weighing of witness bias. See Lewy v. Southern Pac. Trans. Co., 799 F.2d 1281, 1298 (9th Cir.1986) (noting the broad relevance of evidence demonstrating a witness's bias)
 
 2. Condoms in the Restrooms
 
 12
 Smith also argues that the district court impermissibly dismissed her testimony about condoms in the restrooms, because this testimony was not corroborated by any other witness. Assuming that this is a factual finding discrediting Smith, it does not produce the "definite and firm conviction that a mistake has been committed" warranting reversal. Anderson, 470 U.S. at 573.
 
 3. Holloway's Testimony
 
 13
 Smith claims that the district court erred in "rejecting" the testimony of Holloway as "too general and too off-hand to sustain a burden of proof." When asked whether Smith was present when employees used extremely offensive sexual language, Holloway did answer generally: "I can't say yes or no. I don't recall. I don't think so but...." Moreover, because this court does not have the benefit of observing Holloway's demeanor and tone of voice, we defer to the district court's credibility finding. See id. at 575 (emphasizing the deference due a district court when it evaluates the credibility of witnesses). The court did not clearly err in this factual finding.
 
 4. Supervisors Incident
 
 14
 Smith argues that the district court mischaracterized her encounter with two supervisors as "discipline in a work place incident." Smith misreads the district court's decision. The court concluded that "even if the plaintiff's version of the incident is correct, the incident had nothing to do with gender. It was the direct result of her discipline in a work place incident involving another employee." (Emphasis added.) The district court did not clearly err in its finding that the alleged assault was sparked by disciplinary action, and was not related to Smith's gender. See id. at 573-74 ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").
 
 5. Adequacy of the Factual Findings
 
 15
 Smith claims that the district court erroneously omitted critical details surrounding pornography, the "bolt-cutter" incident with Lookabill, and the note regarding parking left on Smith's car. The district court's findings, however, were explicit enough on the ultimate issues to give us "a clear understanding of the basis of the decision and to enable [us] to determine the grounds on which the trial court reached its decision." Louie v. United States, 776 F.2d 819, 822-23 (9th Cir.1985) (internal quotations and citation omitted). "A district court's failure expressly to include necessary findings does not require remand if a complete understanding of the issues may be had from the record." Id. at 823. Because the district court included findings sufficient to provide a clear understanding of the basis of its decision, no error lies.
 
 B. Legal Analysis
 
 16
 Many of Smith's challenges question the district court's application of Title VII law to the facts. Smith's claims of legal error can be grouped into three categories. First, Smith argues that the district court erred by not crediting gender related incidents of harassment when evaluating her burden of proof in her Title VII claim. Next, Smith contends that the district court permitted Oakland Scavenger to be impermissibly slow in meeting its remedial obligations. Finally, Smith alleges several miscellaneous legal errors. PH1H 1. Gender Related Conduct
 
 
 17
 Assuming that gender based conduct is actionable under Title VII,[1] Smith argues that the district court failed to recognize that many of the workplace incidents were gender related. We evaluate the incidents in light of the totality of the circumstances. See Fuller v. Oakland, 47 F.3d 1522, 1527 (9th Cir.1995), as amended, Apr. 24, 1995, (observing that the "hostility" of a work environment: must be measured in light of the "totality of the circumstances.")
 
 
 18
 The district court found or was willing to assume that several incidents occurred, i.e., a rodent placed on Smith's tools; the poor condition of restroom facilities used by Smith; the pornography placed in a truck scheduled to be serviced by Smith; Lookabill's verbal assault directed at Smith; the confrontation with two supervisors who gave her suspension papers; and the note warning that Smith was parked in the wrong area. Viewed in the totality of the circumstances, the district court did not err by characterizing many of these incidents as not gender related. For example, the verbal assault by Lookabill was putatively a dispute over the proper cleaning of oil trays. The rodent on Smith's tools, the restroom problems, the existence of a pornographic magazine in a truck cleaned by Smith, the exchange with the supervisors and the parking note are not incidents of sufficient severity, nor are they clearly incidents of sexual harassment, that compel a finding that the Lookabill episode was gender related. The district court accordingly did not err in its analysis of gender related conduct.[2]
 
 2. Remedial Obligations
 
 19
 Smith argues that the district court permitted Oakland Scavenger to be impermissibly slow in its remedy. We require an employer who has learned of sexual harassment to take "immediate and corrective action reasonably calculated 1) to end the current harassment, and 2) to deter future harassment from the same offender or others." Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475, 1483 (9th Cir.1997).
 
 
 20
 Our review of the record reveals no unremedied incident warranting reversal or a remand. For example, while the pornographic magazine left in the truck cab was certainly offensive, Oakland Scavenger appeared to have conducted a thorough investigation in an attempt to identify the employe who left it there. The company interviewed the driver and crew of the vehicle, who professed no knowledge of the magazine. In a letter to Smith, Oakland Scavenger explained that "[m]any people had access to the truck prior to you coming to work; therefore we cannot pinpoint who put the magazine there." Nonetheless, an Oakland Scavenger manager reassured Smith, "we take incidents relating to sexual harassment very seriously. If I can prove any incidents of this nature, I will take disciplinary action." The company's actions were reasonably calculated to end the current harassment and deter future harassment, id., and the district court therefore did not err in finding Oakland Scavenger not liable. PH1H 3. Miscellaneous Claims of Legal Error
 
 
 21
 Smith argues that the district court relied on impermissible and irrelevant gender stereotypes when it found that Smith was not "retiring or bashful in the workplace." The court used this phrase in the context of a general credibility determination; a determination that is within the discretion of the district court. In the context of this discussion, the district court's choice of words may have been unfortunate, but was not an error of law.
 
 
 22
 Similarly, Smith complains that the district court found that Smith's failure to keep appointments with Oakland Scavenger's Director of Human Resources mitigated the company's failure to remedy sexual harassment. The court commented about these appointments, however, in the context of finding that methods of communication had been created at Oakland Scavenger for the benefit of persons aggrieved by alleged sexual misconduct. When viewed in context, the court's statements are not error.
 
 
 23
 Smith contends that the district court erred by concluding that her work environment was not hostile because Smith used the office restroom for a relatively short period. In Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Supreme Court listed the frequency of the discriminatory conduct and its severity as relevant circumstances in identifying a "hostile" work environment. Id. at 23. The restroom incident was of relatively short duration and moderate severity, (because Smith was using the inconvenient office restroom rather than the clearly inadequate portable toilet), and does not support a Title VII claim.
 
 
 24
 Smith argues that the district court erred by presuming that the work environment was not hostile because Smith bid to return to the Fremont facility. We have stressed that in the face of sexual harassment the victim need not sacrifice work opportunities to effectuate an employer's remedial plan. Steiner, 25 F.3d at 1464; Ellison v. Brady, 924 F.2d 872, 882 (9th Cir.1991) ("We wholeheartedly agree with the EEOC that a victim of sexual harassment should not have to work in a less desirable location as a result of an employer's remedy for sexual harassment.") While we recognize Smith's right to return to the Fremont facility, there still is insufficient evidence to demonstrate that the restroom incidents created a hostile work environment. When Smith complained about the restroom situation she was allowed a private restroom in an office. While less than perfect, this accommodation falls short of a hostile work environment.
 
 
 25
 Finally, Smith argues that the facts, when viewed in their totality, demonstrate that the district court erred by granting a verdict for Oakland Scavenger. While this court reviews factual findings for clear error, "[w]hether the conduct found was sufficiently severe and pervasive to constitute sexual harassment is a question of law reviewed de novo." Fuller, 47 F.3d at 1527.
 
 
 26
 We first note that some of the facts on which Smith relies in her totality argument were disbelieved by the district court. For example, the court found by a preponderance of the evidence that sanitary napkins were not delivered in a humiliating manner, appears to doubt Smith's reports of condoms found in the workplace, and also appears to doubt Smith's allegation that she was assaulted by supervisors with suspension papers.
 
 
 27
 The conduct which the district court actually found occurred includes a pornographic magazine left in the cab of a truck, less-than-perfect restroom facilities, the rodent incident, the Lookabill incident, an encounter with the supervisors, and the parking note. Even when viewed in the totality of circumstances, some of these incidents do not appear gender related: the rodent incident, the Lookabill incident, the supervisor encounter, and the parking note. This leaves the remaining conduct of the pornographic magazine--which may have been left unintentionally--and inconvenient restroom facilities within the office trailer. These two episodes are not "sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Ellison, 924 F.3d at 875-76. Therefore, the district court did not err in arriving at a ruling in favor of Oakland Scavenger.
 
 II. Summary Judgment
 
 28
 Smith contends that the district court erred in its partial grant of summary judgment to Oakland Scavenger on Smith's Title VII retaliation claim. The court reviews de novo a grant of summary judgment. Yamaguchi, 109 F.3d at 1482. "[We] must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Id. If material factual issues exist for trial summary judgment is not proper. Id. PH1H A. Smith's Prima Facie Case
 
 
 29
 We have explained that "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII ... claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994), as amended, July 14, 1994, (internal quotations and citation omitted). "The amount of evidence that must be produced in order to create a prima facie case is very little." Id. (internal quotations and citation omitted). Smith met her burden of establishing a prima facie case.
 
 
 30
 At the end of September or beginning of October, 1992, Smith complained about the restroom conditions.[3] From November 30, 1992, to December 30, 1992--one to two months after complaining about the unequal restroom facilities--Smith was subjected to five disciplinary proceedings. Smith was discharged while at Fremont on April 7, 1993, with an effective date of discharge of April 15, 1993. Roughly six months elapsed between her complaints about the restrooms and her discharge.
 
 
 31
 In Miller v. Fairchild Industries, 797 F.2d 727 (9th Cir.1986), we considered the claim of Title VII plaintiffs whose layoffs occurred less than two months after they negotiated EEOC settlement agreements. Id. at 731-32. The management personnel who participated in the EEOC settlement negotiations were also responsible for the layoffs, which proved that the company knew that plaintiffs had engaged in protected activity. Id. at 731.
 
 
 32
 We held that the plaintiffs in Miller had established a prima facie Title VII case. Id. at 732. We held, "[C]ausation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge." Id. at 731.
 
 
 33
 As in Miller, the same members of management both dealt with Smith when she engaged in protected activity and were involved in her discharge; thus proving that Oakland Scavenger knew that Smith had engaged in protected activity. Also like the plaintiffs in Miller, some of the adverse actions against Smith--the string of disciplinary actions in November and December--occurred within two months of the protected activity: her complaints about the restrooms. Even Smith's discharge, which occurred six months after the protected activity, is close enough to establish a sufficient causal link in the context of the prima facie analysis. Smith has therefore established a prima facie case that she suffered retaliation prohibited by Title VII. PH1H B. Oakland Scavenger's Reasons for the Adverse Actions
 
 
 34
 Because Smith has established a prima facie case, the burden shifts to Oakland Scavenger to advance legitimate, non-retaliatory reasons for the adverse actions taken. Steiner, 25 F.3d at 1465.
 
 
 35
 In response to the disciplinary actions in November and December, Oakland Scavenger first notes that Smith had been subjected to nine episodes of written or verbal discipline from 1989 to July 17, 1992, before she complained about the restrooms.
 
 
 36
 Oakland Scavenger also offers legitimate, non-retaliatory reasons for each of the five disciplinary episodes between November 1922 and December 30, 1993. Smith overtightened an oil plug into an engine block, causing $600 in damage; overfilled the motor oil in a pick up truck; hit shop door rails with a truck she was preparing to service; failed to put sufficient oil in the motors and check the brakes of trucks serviced; and hit and damaged a trailer with another trailer--the second chargeable accident with company equipment.
 
 
 37
 On the discharge form that Oakland Scavenger gave to Smith, the company checked "Rules Violation" and "Other" under the "Discharge" column. In the "Eligible for Re-hire" section, someone wrote, "The Company or Union will not tolerate abusive verbal behavior against fellow employee's." Joseph Damele, former Operations Manager of the Fremont facility, identified numerous disciplinary actions against Smith as a basis for her termination, including Smith's confrontation with co-employee Dorrie McKinney. The numerous disciplinary violations are legitimate, non-retaliatory reasons for Smith's discharge.
 
 
 38
 Oakland Scavenger has therefore met its burden by explaining the legitimate non-retaliatory reasons for its adverse actions.
 
 
 39
 C. Smith's Burden of Showing Oakland Scavenger's Reasons are Pretextual
 
 
 40
 With the burden shifted back to Smith, she is required to produce "specific, substantial evidence of pretext." Wallis, 26 F.3d at 890 (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983)). Smith must " 'tender a genuine issue of material fact as to pretext in order to avoid summary judgment.' " Id. (quoting Steckl, 703 F.2d at 392). In Payne v. Norwest Corp., 113 F.3d 1079 (9th Cir.1997), we explained that "[t]his burden is hardly an onerous one: the plaintiff who has established a prima facie case need produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext." Id. at 1080 (quotations, citations, and internal alterations omitted). In reviewing Smith's pretext evidence, "all reasonable inferences in [her] favor were to be considered by the court in connection with the [employer's] motion for summary judgment." Morales v. Merit System Protection Bd., 932 F.2d 800, 803 (9th Cir.1991.).
 
 
 41
 Smith has met her evidentiary burden. In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court remanded a Title VII race discrimination case to allow the plaintiff a fair opportunity to show that the employer's actions were pretextual. Id. at 804. The Court explained that "[e]specially relevant to such a showing would be evidence that white employees involved in acts against [the employer] of comparable seriousness to the [misconduct of which plaintiff was accused] were nevertheless retained or rehired." Id. In the present case, Smith has presented evidence that she received greater punishment than male employees for similar conduct. When employee Lookabill had an altercation with Smith and used profanity directed at her, it resulted in his suspension for five work days--later reduced to three days by his union grievance to the Board of Adjustment. By contrast, when Smith used profanity when speaking to Martinez, she was suspended for fifteen days--later reduced to five by a union grievance.[4] Moreover, at least one of the reasons why Smith was terminated was because of her alleged use of profanity in an incident with Dorrie McKinney. Smith, however, denies using profanity with a fellow employee.
 
 
 42
 In addition, Smith alleges that the spate of disciplinary actions from December 1992 to her termination were not justified by any nondiscriminatory reason. For example, Smith argues that incidents involving the oil over-fill, the overtightened oil plug, and the cracked [gear] transfer were all due to the failure of Oakland Scavenger to properly train her. Smith claims that the bump to the trailer was caused by inadequate lighting.
 
 
 43
 Determining the validity of these disciplinary actions hinges on evaluating the credibility of Smith versus Oakland Scavenger managers and employees. In Morales, we considered the Title VII claim of a plaintiff who alleged that a series of episodes resulting in his termination had been staged by his superiors. 932 F.2d at 803. We explained in Morales that "[i]f a jury believed [the plaintiff], it could draw the inference that he was indeed singled-out and set up by his superiors." Id. Because the question of pretext could not be resolved without a judgment of the plaintiff's credibility, "[a] triable issue remained." Id.
 
 
 44
 Similarly, if a trier of fact believed Smith's accounts that the disciplinary episodes were the result of poor training and facilities, and not her mistakes, it could find that Oakland Scavenger's adverse actions were pretextual. Moreover, a trier of fact could believe that the differences in discipline between Smith and Lookabill were in retaliation for Smith's legitimate and protected complaints about the inadequate restroom conditions. Triable issues therefore remained, and Oakland Scavenger was not entitled to summary judgment on Smith's retaliation claim.
 
 
 45
 The district court's dicta regarding Smith's retaliation claim in its verdict does not prevent this court from reversing the partial grant of summary judgment. In McDonnell Douqlas, the Court rejected the employer's argument that remand of the issue of race discrimination was unnecessary, because the issue had been "tried thoroughly" in a trial on retaliation. 411 U.S. at 799. The Court stated that "respondent should have been accorded the right to prepare his case and plan the strategy of trial with the knowledge that the [race discrimination] cause of action was properly before the District Court." Id. at 800. In the present case, Smith was not on notice that the district court was effectively reconsidering her retaliation claim and did not litigate that issue during the bench trial. A remand for trial on the retaliation issue is therefore appropriate.
 
 III. Attorney's Fees
 
 46
 Smith has notified the court of her intention to seek attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).
 
 
 47
 The attorney's fee provision of the Civil Rights Act provides: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs." 42 U.S.C. § 2000e-5(k). Smith has merely eestablished a right to proceed to trial on the merits of her Title VII claim, however, she is not, at least as of yet, a "prevailing party" within the meaning of the Civil Rights Act. See, e.g., Sosa v. Hiraoka, 920 F.2d 1451, 1461 (9th Cir.1990).
 
 
 48
 Consequently, an award of attorney's fees at this juncture would be premature.
 
 
 49
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 
 **
 Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 We will assume without deciding that gender discrimination--like sexual discrimination--is actionable under Title VII. See Ellison v. Brady, 924 F.2d 872, 875 n. 5 (9th Cir.1991) (declining to decide "whether a party can state a cause of action for a sexually discriminatory working environment under Title VII when the conduct in question is not sexual"); but cf. Fox v. Sierra Dev. Co., 876 F.Supp. 1169, 1173 (D.Nev.1995) ("[T]he Ninth Circuit has implicitly held that harassment based purely on gender is actionable.") (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463-64 (9th Cir.1994), cert. denied, 513 U.S. 1082 (1995))
 
 
 [2]
 The district court's factual findings reject two of the alleged incidents: the intentional placement of condoms in Smith's work space, and the embarrassing delivery of the sanitary napkins. Because these factual findings are not clearly erroneous, we do not consider them in the "totality of circumstances" analysis
 
 
 [3]
 Oakland Scavenger does not appear to seriously dispute that complaining about the restroom conditions was an activity protected under Title VII. Appellee's Response Brief at 43
 
 
 [4]
 Because of union intervention, Smith was actually suspended for two more days than Lookabill. The key fact, however, is Oakland Scavenger's action in suspending Smith for fifteen days and Lookabill for only five